1 William F. King (023941)
GALLAGHER & KENNEDY, P.A.
2 2575 East Camelback Road
Phoenix, Arizona 85016
3 Telephone: (602) 530-8000
Facsimile: (602) 530-8500
4 Email: bill.king@gknet.com

5 Andrew S. Friedman (005425)
Francis J. Balint, Jr. (007699)
6 BONNETT, FAIRBOURN, FRIEDMAN
 & BALINT, P.C.
7 7301 N. 16th Street, Suite 102
Phoenix, Arizona 85020
8 Telephone: (602) 274-1100
Facsimile: (602) 274-1199
9 Email: afriedman@bffb.com
 fbalint@bffb.com

Attorneys for Plaintiff

UNITED STATED DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Kristen Stewart, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Aspen Group Incorporated; Aspen University, Inc.,<br><br>Defendants. | Case No.: 22-cv-00818-PHX-DLR<br><br>**Unopposed Motion for Preliminary Certification of Settlement Class, Appointment of Settlement Class Representative and Class Counsel, and Preliminary Approval of Proposed Settlement Class** |

**I.    Introduction**

Kristen Stewart ("Plaintiff") respectfully moves the Court for preliminary approval of the proposed class settlement (the "Proposed Settlement") of all claims alleged against Defendants Aspen Group Incorporated and Aspen University, Inc. (collectively, "Aspen"), through the certification of a single settlement class (the "Settlement Class") of students enrolled in Aspen's BSN Pre-Licensure Program (the "BSN Program") when the BSN Program was effectively shut down by state regulators.

Plaintiff in her Complaint (Dkt. 1-3) contends Aspen violated Arizona's Consumer Fraud Act ("ACFA"), A.R.S. § 44-1522 *et seq.*, by failing to disclose to her and members of the proposed Settlement Class multiple material facts specific to Aspen's Arizona BSN Pre-Program, as set forth in part in the Arizona State Board of Nursing's "Notice of Charges" dated February 18, 2022 (Dkt. 1-3, at ECR 26). Aspen denies Plaintiff's allegations, but worked with Plaintiff to identify and address the factual and legal issues in dispute through informal and formal discovery productions and exchanges, which was followed by a lengthy private mediation before respected mediator Mark Worischeck of Sanders + Parks, culminating in a compromise settlement in the amount of $550,000.00 (the "Gross Settlement Fund").

The Proposed Settlement in this case provides the Settlement Class meaningful monetary relief: under the proposed Plan of Allocation, over 500 former Aspen students with at least 15 credit hours invested in the BSN Program will receive $27.25 for every credit hour they had completed at the time of the shut-down. After reduction for attorneys' fees, costs, and a service award, Settlement Class Members will each receive from the net settlement proceeds (the "Settlement Payment Benefit") between $408.00 dollars (15 credit hours) and $1,308.00 (48 hours).

Importantly, the Proposed Settlement establishes no onerous "claims process." Instead, upon final approval Settlement Class Members will automatically receive settlement checks as provided under the proposed Plan of Allocation. The streamlined Settlement Payment Benefit thus directs meaningful monetary relief to Settlement Class Members, without the delay of protracted litigation over claim administration issues in this Court or the Ninth Circuit. In addition to the Settlement Payment Benefit, Aspen has agreed to pay all costs of preparing and disseminating the Class Notice.

"At this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *Howard v. Web.com Grp. Inc.*, No. CV-19-00513-PHX-DJH, 2020 WL 3827730, at *3 (D. Ariz. July 8, 2020) (quotation omitted). To do so, the Court assesses four basic factors: "[1] whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious-

deficiency, [3] does not improperly grant preferential treatment to class representatives or segments of the class and [4] falls within the range of possible approval." *Rodriguez v. QS Next Chapter LLC*, No. CV-20-00897-PHX-DJH, 2020 WL 6882844, at *6 (D. Ariz. Nov. 18, 2020) (quotation and citation omitted). As shown below, the Proposed Settlement easily satisfies each of these preliminary approval factors. Certification of the proposed Settlement Class is also fully warranted under Fed. R. Civ. P. 23. *Rodriguez*, 2020 WL 6882844, at *2.

Accordingly, Plaintiff's motion for preliminary approval is well-taken, and should be granted in its entirety.

**II.     Summary of the Common Class Claims**

Aspen historically operated a for-profit registered nursing degree program in Arizona known as the Pre-Licensure Bachelor of Science in Nursing program (the "BSN Program") at two campus locations: (a) 19602 N. 23rd Ave., Phoenix AZ 85027 ("Main Campus"), and (b) 11811 N. Tatum Blvd. Ste. 4001, Phoenix AZ 85028 ("HonorHealth Campus"). Compl., Dkt. 1-3, at ¶ 1. Aspen was licensed to provide the BSN Program by the Arizona State Board for Private Postsecondary Education ("the Arizona Education Board"); specifically, License No. AVD-01679 (Main Campus) and License No. AVD-01691 (HonorHealth Campus). *Id.*, at ¶ 2. The Arizona State Board of Nursing ("the Arizona Nursing Board") also issued Aspen a provisional approval for a registered nursing program in November 2017, set to expire on July 31, 2022. *Id.*, at ¶ 3.

Aspen offered the BSN Program to prospective students in Arizona, like Plaintiff, through its website and uniform marketing materials. Compl., Dkt. 1-3, at ¶ 4. Based on Aspen's description of the BSN Program, Plaintiff applied to Aspen's BSN Program in April 2020 and thereafter enrolled. *Id.*, at ¶ 5. After commencing her studies at Aspen, however, Plaintiff alleges that, contrary to Aspen's marketing representations to her and other students, Aspen's learning opportunities, faculty resources, quality of instruction, program resources, and its educational and leadership infrastructure were inadequate to support student learning or successful outcomes. *Id.*, at ¶ 6. Specifically, as a result of Aspen's alleged BSN Program failures, Aspen's 2021 first time pass rate for the National Counsel Licensure Examination

("NCLEX-RN") was 58.04%, which ranked last in Arizona and fell far below the state's 80% required minimum threshold set by the Arizona Board of Nursing. *Id.*, at ¶ 7; *see* A.A.C. R4-19-206.G (requiring, *inter alia*, Arizona nursing programs to maintain at least an 80% NCLEX pass rate for graduates taking the NCLEX-RN for the first time within 12 months of graduation).

Based on this fact and several whistleblower reports from December 2020, April 2021, and September 2021, the Arizona Nursing Board commenced a comprehensive investigation into Aspen's BSN Program. Compl., Dkt. 1-3, at ¶ 8. Through its investigation, the Arizona Nursing Board issued to Aspen in February 2022 a "Notice of Charges," which alleged, among other things, that Aspen had engaged in several denominated instances of "[un]professional conduct" as defined under A.R.S. § 32-1601(27) and had committed acts that "deceive[d], defraud[ed] or harm[ed] the public." *Id.*, at ¶ 9. The Arizona Board of Nursing further specifically concluded that Aspen's actions constituted "unprofessional conduct" based on "[f]raud or deceit in advertising, promoting or implementing the program…" *Id.*

On the heels of the Arizona Board of Nursing's Notice of Charges, the Arizona Education Board in March 2022 requested, and Aspen agreed (i) to immediately cease enrollments in the BSN Program until it resolved the matter before the Arizona Board of Nursing; (ii) to remove start date information from its website and marketing materials; and (iii) to report to the Arizona Education Board on a monthly basis (including monthly student records). Compl., Dkt. 1-3, at ¶ 11. As a result, Plaintiff alleges that hundreds of students were left with uncertain futures and untransferable credit hours, in what was described by several media outlets as Aspen's "nursing school nightmare" and "infrastructure collapse." *Id.*, at ¶ 13.

Under the foregoing allegations, Plaintiff alleged Aspen's knowing material misrepresentations and omissions regarding the features of the Aspen BSN Program were false when made, and as such constituted violations of the Arizona Consumer Fraud Act, A.R.S. § 44-1522 *et seq.* ("ACFA"). Compl., Dkt. 1-3, at ¶¶ 76-94. Aspen denied the material allegations of Plaintiff's Complaint and challenged Plaintiff's class allegations. *See* Answer, Dkt. 14, ¶¶ 68-75 (affirmatively alleging, for example, that Plaintiff failed to adequately or properly allege a

4

putative class and denying that "the defined class is subject to class action treatment"); ¶¶ 76-94 (denying Plaintiff's ACFA allegations).

After the pleadings closed, the Parties engaged in both informal and formal discovery. *See* Dkt. 39, Declaration of Francis J. Balint, Jr. ("Balint Decl."), at ¶ 4. With the exception of one discovery dispute, which the Court resolved in Plaintiff's favor (*see* Dkt. 31), the parties worked amicably together and exchanged thousands of pages documents, which further refined the issues relevant to the merits and Plaintiff's proposed class allegations. *Id.* As a result of their cooperative discovery efforts and Aspen's other, ongoing regulatory challenges, in addition to the fact that Aspen's only applicable insurance policy was a "self-consuming" policy with coverage limits depleted by defense costs, the Parties agreed to submit their disputes to mediation before Mediator Worischeck. *Id.*, at ¶ 5.

Mediator Worischeck conducted several pre-mediation discussions to narrow the issues to be addressed at the mediation. Balint Decl., at ¶ 6. On March 29, 2023, the Parties attended a full-day, in-person mediation at Mediator Worischeck's offices in Phoenix. *Id.*, at ¶ 7. Following 10 hours of extensive negotiations, the Parties signed a term sheet to settle all claims. *Id.* After notifying the Court of their settlement (Dkt. 37) and further discussions and negotiations, the Parties executed a formal Stipulation of Settlement ("SOS") on September 18, 2023. *Id.*; *see also* Balint Decl., Exhibit A.

**III.   Summary of the Proposed Class Settlement**

In the SOS, the proposed Settlement Class is defined as: "All persons who, during the Class Period, (a) were in the Cohort or (b) had otherwise completed more than 15 hours enrolled in Aspen's BSN Prerequisite Program in Arizona,[1] but could not enter the BSN Core Program or continue with the BSN Prerequisite Program because of the Arizona Board of Nursing's regulatory actions taken against Defendants." SOS, at ¶ 29. "Cohort" means "the 53 students who were enrolled in Aspen's Arizona BSN Program during the Class Period and had been admitted to, but could not commence, Aspen's BSN Core Program because of the

---

[1] Aspen's BSN Program requires completion of a first-year pre-requisite program. Upon completion of the pre-requisite program, students advance into the core curriculum, which is generally a two-year program. Balint Decl., at ¶ 2.

5

Arizona Board of Nursing's regulatory actions taken against Defendants." SOS, at ¶ 7. Under the SOS, the "Class Period" runs from February 15, 2022, through September 20, 2022. SOS, at ¶ 6.

The proposed Settlement Class is thus by definition narrowly defined to include those Aspen students who completed at least 15 credit hours, but could not continue with the BSN Prerequisite Program or enter into the BSN Core Program because of the Arizona Board of Nursing's regulatory actions taken against Defendants. The proposed Plan of Allocation provides how the Settlement Benefit Payment will be apportioned and allocated amongst the 507 Settlement Class Members: each Settlement Class Member will receive $27.25 per credit hour completed at Aspen, all according to the table set forth below:

| Credit Hours | Payout Per Class Member | Number of Settlement Class Members | Settlement Payments |
|---|---|---|---|
| 15 | $408.75 | 27 | $11,036.25 |
| 16 | $436.00 | 19 | $8,284.00 |
| 17 | $463.25 | 21 | $9,728.25 |
| 18 | $490.50 | 20 | $9,810.00 |
| 19 | $517.75 | 16 | $8,284.00 |
| 20 | $545.00 | 35 | $19,075.00 |
| 21 | $572.25 | 9 | $5,150.25 |
| 22 | $599.50 | 24 | $14,388.00 |
| 23 | $626.75 | 38 | $23,816.50 |
| 24 | $654.00 | 6 | $3,924.00 |
| 25 | $681.25 | 19 | $12,943.75 |
| 26 | $708.50 | 38 | $26,923.00 |
| 27 | $735.75 | 1 | $735.75 |
| 28 | $763.00 | 6 | $4,578.00 |
| 29 | $790.25 | 44 | $34,771.00 |
| 30 | $817.50 | 1 | $817.50 |
| 31 | $844.75 | 4 | $3,379.00 |
| 32 | $872.00 | 35 | $30,520.00 |
| 33 | $899.25 | 1 | $899.25 |
| 34 | $926.50 | 7 | $6,485.50 |
| 35 | $953.75 | 26 | $24,797.50 |
| 38 | $1,035.50 | 23 | $23,816.50 |
| 41 | $1,117.25 | 86 | $96,083.50 |
| 48 | $1,308.00 | 1 | $1,308.00 |
| **TOTALS** | | **507** | **$381,554.50** |

6

1  *See* Balint Decl., Exhibit D.  Upon Final Approval, Aspen will deposit the funds for distribution
2  to the Settlement Class in an escrow account at Alliance Bank, who will then in turn issue and
3  mail the settlement checks to Settlement Class Members.  SOS, ¶ 34.

4  By means of the "Class Notice" as defined in the SOS, every member of the Settlement
5  Class will be sent direct, mailed notice of the Proposed Settlement in a form approved by the
6  Court.  SOS, at ¶¶ 45-52.  The proposed Class Notice describes the Proposed Settlement and
7  clearly explains how any person may (a) exclude him or herself from the Settlement Class or
8  (b) object to any aspect of the Proposed Settlement as a member of the Settlement Class.  SOS,
9  at ¶¶ 45-52.  The Class Notice also specifically includes the Plan of Allocation, which sets forth
10 the amount each participating Settlement Class Member will receive according to the number
11 of credit hours he or she completed.  *See* SOS, at Exhibit 1.

12 Finally, the terms of the Class Release (defined in the SOS) are narrowly drawn:  as Due
13 Process requires, the Class Release is limited to those claims which are "based on the same
14 factual predicate" alleged in the Complaint.  SOS, at ¶ 68.

15 **IV.   Applicable Standards Governing Class Settlement Approval**

16 "[S]trong judicial policy . . . favors settlement[], particularly where complex class action
17 litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  A
18 reviewing court must nevertheless conclude the proposed settlement "taken as a whole, is fair,
19 reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n of City & Cty.*
20 *of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  This assessment follows a two-step
21 procedure: (1) preliminary approval of the settlement terms, certification of the settlement
22 class, and approval of the notice plan, followed by (2) a final hearing on the fairness,
23 reasonableness, and adequacy of the settlement. *Rodriguez*, 2020 WL 6882844, at *2.  When the
24 "parties reach a settlement agreement prior to class certification, courts must peruse the
25 proposed compromise to ratify both the propriety of the certification and the fairness of the
26 settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *Rodriguez*, 2020 WL 6882844,
27 at *1.

28

7

## V. The Court Should Certify the Settlement Class

When parties seek class certification only for the purposes of settlement, the Court should pay particular attention to class certification requirements. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Certification of the Settlement Class is fully warranted here under Rules 23(a) and 23(b)(3). Indeed, courts have consistently upheld the certification of plaintiff litigation and settlement classes based on alleged ACFA violations, like those alleged by Plaintiff here. *See, e.g, London v. Green Acres Trust,* 765 P. 2d 538, 543 (Ariz. Ct. App. 1988) (litigation class); *Siemer v. Assocs. First Capital Corp.*, No. CV-97-281-TUC-JMR-JCC, 2001 WL 35948712, at *3-4 (D. Ariz. Mar. 30, 2001) (litigation class); *Persky v. Turley*, No. CIV-88-1830-PHX-SMM, 1991 WL 329564, at *4 (D. Ariz. Dec. 20, 1991) (litigation class); *Edenborough v. ADT, LLC*, 16-CV-02233-JST, 2017 WL 4641988, at *3 (N.D. Cal. Oct. 16, 2017) (settlement class).

### A. The Rule 23(a) Elements Are Satisfied

Rule 23(a) sets out four threshold requirements applicable to all class actions: (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical . . . of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class"). *Amchem*, 521 U.S. at 613; *Rodriguez*, 2020 WL 6882844, at *2.

#### 1. Numerosity Is Satisfied

Rule 23(a)(1) requires that a class be sufficiently numerous "that joinder of all members is impracticable." *Rodriguez*, 2020 WL 6882844, at *2. "While no absolute limit exists, numerosity is met when general knowledge and common sense indicate that joinder would be impracticable." *Knapper v. Cox Communications, Inc.*, 329 F.R.D. 238, 241 (D. Ariz. 2019) (citing *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 365 (D. Ariz. 2009)). "Generally, forty or more members will satisfy the numerosity requirement." *Knapper*, 329 F.R.D. at 241; *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity presumed where class consists

of forty or more members). Here, the Settlement Class encompasses over five-hundred former Aspen students. Balint Decl., at ¶ 25. Numerosity is readily satisfied.

### 2. Commonality Is Satisfied

Commonality exists where there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). The common legal or factual contention underlying the claims "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Here, the Settlement Class readily satisfies commonality because Plaintiff's claims are premised upon Aspen's allegedly uniform material omissions inducing its students to invest their time and money in the BSN Program. For example, questions of law and fact common to all Settlement Class Members include, but are not limited to:

- whether Aspen omitted material facts concerning its ability to maintain its licensure and credentialing needed to administer its BSN Program, and its BSN Program's sustainability as a matter of going concern;
- whether Aspen's material omissions regarding its alleged BSN Program failures, as listed in the Notice of Charges, constitute an unfair and/or deceptive practice under the ACFA; and,
- whether Plaintiff and the other Settlement Class Members were damaged as a result of Aspen's alleged material omissions.

Compl., Dkt. 1-3 at ¶ 70; *see also* Balint Decl., at ¶ 27.

### 3. Typicality Is Satisfied

Rule 23(a) next requires that "the claims or defenses of the representative parties" be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named

9

1  plaintiffs, and whether other class members have been injured by the same course of conduct."
2  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks
3  omitted).

4      Here, the typicality requirement is easily met because Plaintiff and other members of
5  the Settlement Class all hold precisely the same ACFA claims challenging Aspen's common
6  material omissions regarding the adequacy and sustainability of its BSN Program. Balint Decl.,
7  at ¶ 27; *see, e.g., Asghari v. Volkswagen Grp. of Am., Inc.*, No. CV-13-02529-MMM-VBKX, 2015
8  WL 12732462, at *13 (C.D. Cal. May 29, 2015) (finding typicality where the named plaintiffs
9  were each current or former owners of class vehicles who allege that they were injured by an
10 oil consumption defect and by defendants' purported misrepresentations and omissions
11 regarding the same); *Edenborough*, 2017 WL 4641988, at *3 ("Plaintiffs purchased ADT security
12 services without knowledge or disclosure from ADT regarding vulnerabilities in the wireless
13 security system, and the same can be said for other class members. . . .Plaintiffs have satisfied
14 the typicality requirement.").

### 4. Adequacy of Representation Is Satisfied

16     Rule 23(a)(4)'s adequacy requirement ensures that (1) the interests of the proposed class
17 representatives are not antagonistic to the interests of the proposed class, and (2) counsel for
18 the class is qualified and competent to vigorously prosecute the action on a class-wide basis.
19 *Staton*, 327 F.3d at 957. This adequacy inquiry considers a number of factors, including "the
20 qualifications of counsel for the representatives, an absence of antagonism, a sharing of
21 interests between representatives and absentees, and the unlikelihood that the suit is collusive."
22 *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir. 1992); *Rodriguez*, 2020 WL 6882844, at
23 *3-4.

24     Here, there is no conflict between Plaintiff's interests and the other members of the
25 Settlement Class: all have the same ACFA claims and common alleged injuries in the form of
26 non-transferable credits. Balint Decl., at ¶ 29. And Plaintiff's Counsel together are extremely
27 experienced in class action litigation under the ACFA. *Id.*, at ¶ 30; *see, e.g.,*
28 *Feller v. Transamerica Life Ins. Co.*, 2:16-CV-01378-CAS-AJW, 2017 WL 6496803, at *18 (C.D.

Cal. Dec. 11, 2017) (appointing Bonnett, Fairbourn as class counsel); *Edenborough*, 2017 WL 4641988, at *5 (same).

Plaintiff's Counsel have furthermore satisfied all the requirements for appointment as Class Counsel under Rule 23(g)(1), having diligently and competently prosecuted the claims alleged on behalf of the Settlement Class to date, including identifying and investigating the potential class claims for months prior to commencing the lawsuit; preparing the detailed class action complaint; preparing several formal and informal discovery requests; reviewing Aspen's documents produced in response thereto; litigating discovery issues; and successfully negotiating a global settlement that protects the interests of all members of the Settlement Class. Balint Decl., at ¶ 30.

### B. Rule 23(b)(3) is Satisfied

Class certification is appropriate under Rule 23(b)(3) where "the court finds that [1] the questions of law or fact common to class members predominate over any questions affecting only individual members, and that [2] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir. 2001).

#### 1. Common Claims Predominate

"The predominance inquiry of Rule 23(b)(3) asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009) (internal quotation marks and citation omitted).

Here, common questions plainly do predominate as to Plaintiff's ACFA claim, which turns on Aspen's alleged failure to disclose the same material facts to **all** prospective students. Balint Decl., ¶ 28. If Aspen violated the ACFA with respect to Plaintiff, it necessarily violated the ACFA with respect to the other members of the Settlement Class. *Id.* The only matter of individual variation is the amount damages each Class Member is alleged to have sustained, which does not undermine predominance. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (stating, "[i]n this circuit ... damage calculations alone cannot defeat certification")

11

(quoting *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)); *Edenborough*, 2017 WL 4641988, at *5 ("As noted above, the central issues in this case are commonly shared by the members of the class. The issues Plaintiffs identify, including whether Defendant's wireless security systems were vulnerable to attack and whether the omissions misled and damaged consumers, will be central to the resolution of the case and are commonly shared by all class members….The proposed class satisfies the requirements of Rule 23(b)(3).").

### 2.   A Class Action Is Superior to Individual Litigation

Finally, superiority is established where "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Rule 23(b)(3) sets forth factors for determining whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Here, the applicable "superiority" factors of Rule 23(b)(3) weigh heavily in favor of class certification. Balint Decl., at ¶ 31. For most of Aspen's former students, it is neither economically feasible nor judicially efficient to challenge Aspen's alleged ACFA violation through an individual lawsuit. *Id.* Nor is Plaintiff's Counsel aware of any other pending litigation asserting such claims against Aspen arising out of the predicate facts at issue here. *Id.*

## VI.   The Court Should Preliminarily Approve the Proposed Settlement

As this Court has recognized, preliminary approval entails an evaluation of four factors: "whether the proposed settlement [1] appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiency, [3] does not improperly grant preferential treatment to class representatives or segments of the class and [4] falls within the range of possible approval." *Rodriguez*, 2020 WL 6882844, at *6 (quotation and citation omitted)); *accord*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

### A.   The Settlement is the Product of Good Faith, Arm's-Length Negotiations among Experienced Counsel Mediated by a Private Mediator.

The Proposed Settlement is the product of a formal mediation process conducted at arms-length under the auspices of an extremely experienced and highly regarded mediator.

Balint Decl., at ¶¶ 5-7, 9, 14-16, and 32; *see, e.g., Satchell v. Fed. Express Corp.*, Nos. C03–2659 SI, C 03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Edenborough*, 2017 WL 4641988, at *8 ("The Court concludes that the negotiations and agreement were non-collusive. As Plaintiffs note, the parties reached agreement on settlement terms following considerable discovery and two separate days of mediation before an experienced mediator. These facts support the conclusion that the settlement is non-collusive and likely to benefit the class members.") (citing *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (explaining that use of an experienced mediator "suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel")).

Furthermore, Class Counsel have unequivocally concluded that the Proposed Settlement is fair, reasonable, and adequate. Balint Decl., at ¶ 33; *see, e.g., Wren v. RGIS Inventory Specialists*, No. C–06–05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining.") (quoting *Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010)); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989) (noting that "[c]ounsels' opinions warrant great weight both because of their considerable familiarity with this litigation and because of their extensive experience in similar actions"); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1079 (C.D. Cal. 2010) (same).

### B. The Proposed Settlement Has "No Obvious Deficiencies"

The proposed settlement has no obvious deficiencies. It provides direct monetary relief without any claims process. The Notice program is reasonable and done at Aspen's expense. And the monetary relief is adequate based on the hurdles that would be faced if litigation were to continue and Plaintiff would have to obtain class certification and establish liability and damages on a class-wide basis.

13

In all, the Proposed Settlement is appropriately tailored to afford a substantial and immediate cash recovery for Settlement Class Members who could not continue their education at Aspen and who could not, thereafter, transfer all of their earned Aspen credits to their successor school of choice, in an amount that directly corresponds to their particular loss. Balint Decl., at ¶ 28. Every eligible Settlement Class Member will receive a predetermined percentage of whatever they would have been entitled to had they litigated and prevailed on their ACFA claim. *Id.*

Finally, under the Proposed Settlement, Settlement Class Counsel will seek a common fund fee award not to exceed the Ninth Circuit's 25% benchmark. SOS, at ¶ 62; *see generally Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997); *see also, e.g., Edenborough*, 2017 WL 4641988, at *8 ("The Plaintiffs' … request for 25% of the total settlement amount matches the 25% benchmark established by the Ninth Circuit."). And Settlement Class Counsel's lodestar, calculated using hourly rates consistent with those recently approved by the Court as reasonable in other cases, will yield a negative—not a positive—multiplier. Balint Decl., at ¶ 21.

### C. No Preferential Treatment to Class Representatives

The Plaintiff/Class Representative is treated the same under the Proposed Settlement and Plan of Allocation as every other member of the Settlement Class, except for a Court approved service award to Plaintiff of the sort typically awarded in class litigation, not to exceed $5,000. SOS, at ¶ 62; Balint Decl., at ¶ 22; *see, e.g., Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases."); *Congdon v. Uber Techs., Inc.*, No. 16-cv-02499-YGR, 2019 WL 2327922, at *9 (N.D. Cal. May 31, 2019) ("The Ninth Circuit has repeatedly held that $5,000 is a reasonable amount for an incentive award.") (collecting cases).

### D. The Proposed Relief is Well-Within the "Range of Possible Approval"

To determine whether a settlement "falls within the range of possible approval," the Court focuses on "substantive fairness and adequacy," and "consider[s] plaintiffs' expected

14

1  recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484
2  F. Supp. 2d at 1079-80.

3        Here, Aspen denies any wrongdoing, fault, liability or damage to Plaintiff and members
4  of the Settlement Class, denies that it committed any violation of law or breach of duty, denies
5  that it acted improperly in any way, and contends that the Actions have no merit. *See* Answer,
6  Dkt. 14, at ¶¶ 76-94. Aspen has also argued that certification of a class is improper, and that it
7  will be impossible for Plaintiff to prove damages. *Id.*, at ¶¶ 68-75. Plaintiff, on the other hand,
8  believes the claims have merit, but recognize the inherent risks of litigating her claim through
9  class certification, summary judgment, trial, and potential appeals, and of achieving a better
10 result than that offered by the Settlement here. Balint Decl., at ¶¶ 12-14. The Settlement, in
11 contrast, provides certainty of recovery. *Id.* There is a very real risk that the Settlement Class
12 could obtain no better outcome against Aspen through continued litigation, trial, and appeal.
13 *Id.* This holds especially true in light of Aspen's ongoing regulatory and financial issues. *Id.*

14       The Proposed Settlement provides monetary payouts to 507 students ranging from a
15 minimum of $408.00 dollars (15 credit hours) to a maximum of $1,308.00 (48 hours), without
16 the risk and delays of continued litigation, trial, and appeal. Balint Decl., at ¶ 17. These
17 amounts are certainly within in the "ballpark" for approval, especially considering Aspen's
18 challenges to Plaintiff's ACFA claims and class certification, its ongoing regulatory and financial
19 issues, and its depleting $500,000.00 of applicable insurance. *Id.*, at ¶¶ 5, 12-14.

20       **E.    The Proposed Settlement Is Otherwise Fair, Adequate and Reasonable**

21       Finally, at the preliminary approval stage, the Court may "preview" the factors that will
22 ultimately inform final approval. *Harris*, 2011 WL 1627973, at *9 (citing *Churchill Vill., LLC v.
23 Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). Here, the parties' formal and informal discovery
24 exchanges, spanning thousands of pages of documents, has provided the parties a sense of the
25 relative strength of their respective claims and defenses. Given (1) the expense and length of
26 time necessary to prosecute the Action through trial; (2) the uncertainty of outcome at trial and
27 the possibility of an appeal by either side following the trial; (3) the possibility that a contested
28 class might not be certified, and if certified, the possibility that such certification would be

1  reversed on appeal; (4) the risk that Aspen could file a motion for summary judgment that, if
2  granted, could dispose of all or many of the claims in the Action; (5) the risk in establishing a
3  premium price paid Settlement Class Members for the Aspen education, which is hotly
4  contested in this litigation; and (6) the risk in establishing a class-wide measure of damages, on
5  top of Aspen's on-going regulatory and financial challenges, Plaintiff faced the risk of zero
6  recovery.  Balint Decl., at ¶ 13.  Furthermore, if this litigation does not settle and instead
7  proceeds to judgment, review by the Ninth Circuit is inevitable no matter how this Court rules
8  at the trial level.  *Id.*, at ¶ 13-14.  Considering the overall risks, expense, and significant delay
9  associated with continued litigation, the Proposed Settlement is a fair, reasonable, and adequate
10 resolution of the class claims. *Id.* ¶¶ 16-17, 33.

**VII.    The Court Should Approve the Means and Form of Class Notice**

Rule 23 requires the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128-29 (9th Cir. 2017) (citing Rule 23(c)(2)(B) (emphasis in original)). To satisfy due process considerations, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

The Class Notice proposed here meets all the requirements of Rule 23(c)(2)(B) and due process. *See* SOS, Exhibit A. It clearly and concisely states in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). *See, e.g., Rodriguez*, 2020 WL 6882844, at *8.

Finally, the dissemination of notice by direct mail amply satisfies the requirements of due process and Rule 23(c)(2). *Rodriguez*, 2020 WL 6882844, at *8. Since the Settlement Class

Members are all former Aspen students, Aspen has highly reliable current mailing addresses. Balint Decl., at ¶ 26.

## VIII. Conclusion & Relief Requested

Plaintiff respectfully requests that the Court (a) provisionally certify the Settlement Class under Rules 23(a), 23(b)(3) and 23(e); (b) appoint Plaintiff Kristen Stewart as the Settlement Class Representative; (c) appoint Andrew S. Friedman, Francis J. Balint, Jr., and William F. King and their respective law firms as Settlement Class Counsel; (d) preliminarily approve the Proposed Settlement and Plan of Allocation for purposes of issuing notice to Settlement Class Members; (e) schedule the Final Approval Hearing (at least 120 days from the date of the Preliminary Approval Order); and (f) approve the form, content, and proposed means of communicating the Class Notice.

Plaintiff has lodged a proposed form of Order in compliance with LRCiv. 7.1(b)(2).

Respectfully submitted this 2nd day of October, 2023.

> GALLAGHER & KENNEDY, P.A.
>
> */s/ William F. King*
> William F. King
> GALLAGHER & KENNEDY, P.A.
> 2575 East Camelback Rd.
> Phoenix, Arizona 85016
>
> Andrew S. Friedman
> Francis J. Balint, Jr.
> BONNETT, FAIRBOURN, FRIEDMAN
>   & BALINT, P.C.
> 7301 N. 16th Street, Suite 102
> Phoenix, Arizona 85020
>
> *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of October, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

>Robert R. Berk
>Charles M. Callahan
>JONES SKELTON & HOCHULI, P.L.C.
>40 N. Central Avenue, Suite 2700
>Phoenix, Arizona 85004
>Attorneys for Aspen
>RBerk@JSHFIRM.com
>CCallahan@JSHFIRM.com

/s/    DC Hatheway